UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                    CR. NO.  05-80110

    v.

                                      HONORABLE ARTHUR J. TARNOW

D-2   JOSEPH  DJOUMESSI,

        Defendant.

_____/

**DEFENDANT JOSEPH DJOUMESSI'S**
**SENTENCING MEMORANDUM**

DEFENDANT JOSEPH DJOUMESSI, by his counsel, ANDREW N. WISE of the Federal Defender Office, files this memorandum to inform the Court as to those factors he believes are relevant to the determination of the sentence in this matter.

On March 7, 2006, the Court, following a bench trial, found Mr. Djoumessi guilty of three counts: Count One– conspiracy in violation of 18 U.S.C. § 371, holding a person to involuntary servitude in violation in violation of 18 U.S.C. § 1584, and harboring an alien in violation of 8 U.S.C. § 1324(a)(1)(A)(iii) & (B)(I).   Mr. Djoumessi requests that the Court sentence him to a term of imprisonment that takes into account the almost seven years he has spent in custody on the related state case and two to eight years he has remaining to serve on the state sentence.  Specifically, Mr. Djoumessi asks this Court to impose a sentence

of not more than 26 months to be served concurrently with his undischarged state sentence.[1]

Such as sentence is "sufficient, but not greater than necessary," to comply with the purposes

of sentencing set forth in 18 U.S.C. 3553(a)(2).

The Sixth Circuit has set out the method to be used in imposing sentence, *post-Booker:*

> In *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the Supreme Court invalidated the mandatory use of the Sentencing Guidelines and held they are now "effectively advisory." We have held that "[o]nce the appropriate advisory Guideline range is calculated, the district court throws this ingredient into the section 3553(a) mix." *United States v. McBride*, 434 F.3d 470, 476 (6th Cir.2006). Section 3553(a) instructs a district court to impose "a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [section 3553(a)(2)]." 18 U.S.C. § 3553(a). The 3553(a)(2) factors which are to be considered when sentencing are the seriousness of the offense, deterrence of future crimes, protection of the public from future crimes of the defendant, and providing the defendant with needed training or correctional treatment. 18 U.S.C. § 3553(a)(2).

*U.S. v. Collington* 461 F.3d 805, 807 (6th Cir. 2006)

Additionally, " The district court, in sentencing, should also consider the nature and circumstances of the offense, the characteristics of the defendant, the kinds of sentences available, the sentencing guidelines range, policy statements from the Sentencing Commission, the need to avoid sentencing disparities, and the need to provide restitution to the victims. *See* 18 U.S.C. § 3552(a)(1), (3)-(7)." *Id.* nt 1.

---

[1] This sentence is based upon a maximum applicable guideline range of 108 to 135 months adjusted by the 82 months Mr. Djoumessi will have served in state custody at the time of his federal sentencing. An analysis of this adjustment under U.S.S.G. § 5G1.3(b) is discussed *infra.*

2

## The Appropriate Sentencing Guideline Range[2]

With respect to the sentencing guideline range, the appropriate sentencing guideline range in this case is at most 108 to 135 months.[3]   Pursuant to U.S.S.G. § 5G1.3(b) and Application Note 2 to that section, the sentence in this case should be run concurrently with Mr. Djoumessi's undischarged state sentence and the Court should adjust the sentence downward by the 82 months that Mr. Djoumessi will have served in state custody as a result of conduct taken into account in determining the guideline range in this case.

Section 2H4.1 of the Guideline Manual provides the offense level for violations of 18 U.S.C. § 1584.[4]   That section provides for a Base Offense Level of 22.  Subsection (b)(3) provides for a Specific Offense Characteristic increase of 3 levels if "any victim was held in a condition of peonage or involuntary servitude for (A) more than one year. . . ."  This increase results in an offense level of 25 without any other adjustments.  For the reasons that follow, Mr. Djoumessi asks that this Court find that this is the appropriate offense level in this case.

---

[2]   By beginning the discussion of the appropriate sentence in this case with a calculation of the appropriate guideline range, Mr. Djoumessi does not wish to suggest that the Court should give any more or less weight to the sentencing guideline range than any of the other factors enumerated in 18 U.S.C. § 3553(a).

[3]   The 1998 Guideline Edition has been used as it represents the Guidelines in effect at the time the offenses alleged were completed.   See Presentence Investigation Report ¶ 23.

[4]   As there is a conspiracy count in the instant case, § 2X1.1 refers the Court to the offense for the underlying offenses.  As the involuntary servitude count provides a higher offense level than the immigration count and the objects group with the conspiracy, § 3D1.2, the involuntary servitude guideline controls in this case.

3

The Probation Department suggests that the provisions of §2H4.1(b)(4)(B) apply in this case.  Mr. Djoumessi objects to the application of that provision.  Subsection (b)(4) of § 2H4.1 provides that:

> If any other felony offense was comitted during the commission of, or in connection with, the peonage or involuntary servitude offense, increase to the greater of:
>
> (A)    2 plus the offense level as determined above, or
>
> (B)    2 plus the offense level from the offense guideline applicable to that other offense, but in no event greater than level 43.

In this case, the Probation Department suggests that another felony offense (criminal sexual conduct) was committed during the commission of and in connection with involuntary servitude.   The facts of the case as established at the trial do not support this contention.

Assuming *arguendo* that the alleged criminal sexual conduct occurred during the commission of and in connection with the involuntary servitude as suggested by the Probation Department, application of subsection (4)(A) would result in an offense level of 27 for the instant offense.   Subsection (4)(B) would add two levels to the offense level for the criminal sexual conduct.  The Probation Department suggests that this offense level is determined by § 2A3.1 Criminal Sexual Abuse.  The Probation Department suggests that the sexual conduct in this case was forcible and therefore § 2A3.1 is the appropriate guideline for cross-reference in this case.  PSR ¶ 24.   That section provides for a base offense level of 27, to which two levels would be added pursuant to § 2H4.1(b)(4)(B), resulting in a total offense level of 29.  The Probation Department suggests that a number of specific offense

4

characteristics from that section also apply.   Mr. Djoumessi objects to those enhancements for the reasons that follow.

**The Offense Was Not Committed by Means Set Forth in 18 U.S.C. § 2241(a) or (b).**

Subsection (b)(1) to U.S.S.G. § 2A3.1 provides for a four level increase "[i]f the offense was committed by means set forth in 18 U.S.C. § 2241(a) or (b)(including but not limited to, the use or display of a dangerous weapon). . . ."   The Probation Department has suggested that this adjustment applies to the instant case, because "[f]orce was used in the commission of the instant offense by means set forth in 18 U.S.C. § 2241(a)."  PSR at ¶ 25. Title 18 United States Code, section 2241(a) prohibits causing another person to engage in a sexual act ". . .(1) by using force against that other person; or (2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping. . . ."   At the trial in this case, there was no testimony that Mr. Djoumessi ever used physical threats against the victim or anyone else in connection with the alleged sexual conduct.    As such this adjustment is inappropriate.

**The Victim's Age at the Time of the Offense is Uncertain**

The Probation Department has suggested that a two level increase due to the age of the victim is appropriate under §2A3.1 (2) as she was between the ages of 12 and 16 years old.  PSR ¶ 26. The victim in this case was not able to provide specific dates for the alleged sexual contacts in this case.  She did testify that she was about 16 years old at the time of the first alleged contact.  See Trial Tr. 2/24/06 at 97.   Given this statement and the victim's repeated inconsistencies as to what happened and when, the Court should find that her age at the time of the first contact has not been established sufficiently to apply this adjustment.

5

It is also worth noting that Mr. Djoumessi was acquitted of two counts of first degree criminal sexual conduct in his state trial.  That the victim was between 13 and 16 years old was a specific element of that offense.

**The Victim Was Not in the "Custody, Care or Supervisory Control" of Mr. Djoumessi**

The Probation Department suggests that the offense level be increased by two levels under U.S.S.G. § 2A3.1(b)(3)(A) as the victim was "in the custody, care, or supervisory control of the defendant."  PSR ¶ 27.  Mr. Djoumessi was convicted of holding Ms. Fru in involuntary servitude.   The defense was that Ms. Fru was a child in his household and treated as such including being required to do chores.   This defense was apparently rejected by the verdict of guilty.   To apply this enhancement is thus inappropriate.

Assuming that it is possible to apply this subsection to a person holding the victim in involuntary servitude to do so would amount to impermissible double counting under the sentencing guidelines.  The Sixth Circuit  "adhere[s] . . . to [the] well-established rule that impermissible 'double counting' occurs when precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways. . . ."  *Id.* at193-194 (footnotes and citations omitted); *United States v. Young*, 266 F.3d 468, 485 (6th Cir. 2001).   Mr. Djoumessi's offense level has already been adjusted based on his conviction for involuntary servitude based upon the same set of facts that the Probation Department uses to justify its conclusion in support of this adjustment.  This violates the principle against double counting.

## The Victim Did Not Sustain Serious Bodily Injury

The Probation Department suggests a two level increase under § 2A3.1(b)(4) because "the victim sustained serious bodily injury." PSR ¶ 28. Such an adjustment in this case is inappropriate. Application Note 1 to § 2A3.1 states that while "serious bodily injury" is defined in the Commentary to §1B1.1 to apply when conduct involves sexual abuse under 18 U.S.C. § 2241 or § 2242 or any similar offense under state law, ". . . for purposes of this guideline, 'serious bodily injury' means conduct other than criminal sexual abuse, which is already taken into account in the base offense level under subsection (a)." As no evidence has been produced that any additional injury resulted from the alleged sexual conduct, this adjustment should not be applied. *See, United States v. Guy*, 282 F.3d 991 (8th Cir. 2002)

## The Victim Was Not Vulnerable Under U.S.S.G. § 3A1.1(b)(1)

The Probation Department suggests a two level adjustment under the vulnerable victim provisions of U.S.S.G. § 3A1.1(b)(1). ¶ 29 The Probation Department responded to Mr. Djoumessi's objection to this adjustment by noting particular vulnerabilities such as her immigration status, educational level, social isolation, lack of ability to travel, etc. PSR A-3. These are precisely the factors that the government argued transformed her from a member of the Djoumessi household to a person held in involuntary servitude. As such, these factors have been taken into account in the offense level for involuntary servitude. Application Note 2 of § 3A1.1 which provides in part "Do not apply subsection (b) if the factor that makes the person a vulnerable victim is incorporated in the offense guideline. For example, if the offense guideline provides an enhancement for the age of the victim, this subsection would not be applied unless the victim was unusually vulnerable for reasons

7

unrelated to age." As such, application of this adjustment is inappropriate and violates the principle against "double counting" discussed *supra*.

**The Appropriate Guideline Range in this Case is at Most 108 to 135 Months**

For the reasons discussed above, the appropriate offense level in this case is at most 29. (2 levels from U.S.S.G. § 2H4.1(4)(B) plus 27 from U.S.S.G. 2A3.1(a)). As calculated by the Probation Department, Mr. Djoumessi falls into a Criminal History Category of III. PSR ¶46. As such the resulting guideline range is 108 to 135 Months.

**Other Applicable Guideline Provisions**

**U.S.S.G. § 5G1.3**

Mr. Djoumessi is currently serving an undischarged state sentence of 9 to 15 years for his conviction for Criminal Sexual Conduct 3rd Degree. As of July 27, 2007 he will have served 7 years or 84 months of that sentence. Section 5G1.3 of the sentencing manual provides instructions for imposing sentence on an individual subject to an undischarged term of imprisonment. That section provides:

> (a) If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.
>
> (b) If subsection (a) does not apply, and the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment.
>
> (c) (Policy Statement) In any other case, the sentence for the instant offense may be imposed to run concurrently, partially

concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

U.S.S.G. § 5G1.3 (1998 ed.)   In this case, should the court use the sexual assault guideline, subsection (b) would apply as Mr. Djoumessi is serving a state sentence for that offense. As such, the sentence in this case should be imposed to run concurrently with his state sentence.   Additionally, the sentence should be adjusted by the 82 months that Mr. Djoumessi has served in custody.   Application Note 2 to U.S.S.G. 5G1.3 provides:

> Adjusted concurrent sentence--subsection (b) cases. When a sentence is imposed pursuant to subsection (b), the court should adjust the sentence for any period of imprisonment already served as a result of the conduct taken into account in determining the guideline range for the instant offense if the court determines that period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons. . . . For clarity, the court should note on the Judgment in a Criminal Case Order that the sentence imposed is not a departure from the guideline range because the defendant has been credited for guideline purposes under § 5G1.3(b) with [time] served in state custody that will not be credited to the federal sentence under 18 U.S.C. § 3585(b).

U.S.S.G § 5G1.3, Application Note 2.

Because the 108 to 135 month sentencing guideline takes into account the conduct underlying Mr. Djoumessi's state conviction, this Court should impose a concurrent sentence adjusted by 82 months in this matter.

## Bases for Departure Under the Sentencing Guidelines

As a part of the sentencing determination under 18 U.S.C. § 3553, the Court must consider if there are any bases under the sentencing guidelines for a downward departure.

9

*See, United States v. Cousins,* 469 F.3d 572, 577 (6th Cir. 2006).    The general provision

regarding guideline departures is U.S.S.G. § 5K2.0, which provides:

> Under 18 U.S.C. § 3553(b) the sentencing court may impose a
> sentence outside the range established by the applicable
> guideline, if the court finds "that there exists an aggravating or
> mitigating circumstance of a kind, or to a degree, not adequately
> taken into consideration by the Sentencing Commission in
> formulating the guidelines that should result in a sentence
> different from that described." Circumstances that may warrant
> departure from the guidelines pursuant to this provision cannot,
> by their very nature, be comprehensively listed and analyzed in
> advance. The controlling decision as to whether and to what
> extent departure is warranted can only be made by the courts.
> Nonetheless, this subpart seeks to aid the court by identifying
> some of the factors that the Commission has not been able to
> take into account fully in formulating the guidelines. Any case
> may involve factors in addition to those identified that have not
> been given adequate consideration by the Commission. Presence
> of any such factor may warrant departure from the guidelines,
> under some circumstances, in the discretion of the sentencing
> court. Similarly, the court may depart from the guidelines, even
> though the reason for departure is taken into consideration in the
> guidelines (e.g., as a specific offense characteristic or other
> adjustment), if the court determines that, in light of unusual
> circumstances, the guideline level attached to that factor is
> inadequate.

U.S.S.G. § 5K2.0

**Successive State/Federal Prosecutions are a Basis for Downward Departure**

In the seminal departure case, *Koon v. United States,* 518 U.S. 81, 116 S.Ct. 2035

(1996) the Supreme Court recognized that a federal prosecution following an unsuccessful

state prosecution is a proper basis for a downward departure under U.S.S.G. § 5K2.0.  *Koon*

involved a government  appeal of the sentence imposed on the police officers involved in the

infamous Rodney King case.  The defendants were originally tried and acquitted in state

court on charges of assault and using excessive force during the arrest of Mr. King.   They

10

were then tried and convicted in federal court for violating 18 U.S.C. § 242–violation of

constitutional rights under color of authority.   The district court departed from the guideline

range based upon, *inter alia,* the successive state and federal prosecutions.   The Supreme

Court in addressing this basis for a departure stated as follows:

> As for petitioners' successive prosecutions, it is true that
> consideration of this factor could be incongruous with the dual
> responsibilities of citizenship in our federal system in some
> instances. Successive state and federal prosecutions do not
> violate the Double Jeopardy Clause. *Heath v. Alabama*, 474
> U.S. 82, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985). Nonetheless, the
> District Court did not abuse its discretion in determining that a
> "federal conviction following a state acquittal based on the same
> underlying conduct ... significantly burden[ed] the defendants."
> 833 F.Supp., at 790. The state trial was lengthy, and the toll it
> took is not beyond the cognizance of the District Court.

*Koon v. United States,*  518 U.S. 81, 112, 116 S.Ct. 2035, 2053 (1996).

In this case, Mr. Djoumessi and his wife Evelyn were tried and acquitted on charges

of kidnaping in the Oakland County Circuit Court.   The state's theory of prosecution was

that the Djoumessi's kidnaped the victim in this case by holding her in involuntary servitude.

*People v. Djoumessi*, Mich. Ct. of Appeals Docket No. 231993, Order of 2/20/2001.

Following that acquittal, the Government obtained the instant indictment two weeks before

the statute of limitations in this case expired.   The two trials that the Djoumessi's have had

to endure have had an incalculable negative impact on their family.   Additionally, a departure

for these reasons fosters the goal of 18 U.S.C. § 3553(A) to promote respect for the law

because, although legal under the system of dual sovereignty, such prosecutions often have

an aura of government vindictiveness associated with them.   Such a departure may mitigate

this societal perception.

11

**U.S.S.G. 4A1.3 Adequacy of Criminal History**

Mr. Djoumessi falls into Criminal History Category III because he has two prior alcohol related driving offenses dating from October and November of 1997.   Mr. Djoumessi was sentenced to probation on each violation.   Because he was on that probation during the time of the instant offense, two additional points are added.   PSR ¶ 45.   Section 4A1.3 of the Guidelines recognizes that:

> There may be cases where the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes. An example might include the case of a defendant with two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period. The court may conclude that the defendant's criminal history was significantly less serious than that of most defendants in the same criminal history category (Category II), and therefore consider a downward departure from the guidelines.

U.S.S.G. § 4A1.3.   This case, where Mr. Djoumessi's two prior misdemeanor convictions for which he received probation almost ten years ago place him in criminal history III, is exactly the type of situation anticipated by this section and a therefore a departure is warranted.

**Guidelines failed to consider Good Time Credit for 5G1.3(b) Adjusted Sentences.**

The history of the Sentencing Guidelines reveals that the Sentencing Table, upon which all federal sentences are based, was calibrated on the assumption that well-behaved prisoners would receive 15% good time on the sentence imposed. United States Sentencing Commission, Supplemental Report On The Initial Sentencing Guidelines And Policy

Statements (June 18, 1987) at 23.   Thus, the Court should consider a downward departure equal to 15 % of the time that Mr. Djoumessi has served in state custody (approximately 12 months) to account for the fact that he will not earn good time on that period of time.  *See, Kelly v. Daniels*, 469 F.Supp2d 903 (Dist. Or. 2007).  Failure to grant such a departure would result in an unwarranted disparity between Mr. Djoumessi and inmates who do not have lengthy periods of state incarceration behind them and, as such,  also meets the factor that the Court must consider under 18 U.S.C. § 3553(a)(6).

## A Sentence of Not More than 26 Months is Appropriate Pursuant to 18 U.S.C. § 3553(a)

Given the applicable guideline range and the above discussed bases for departure, the sentence of no more that 26 months to be served concurrently with Mr. Djoumessi's undischarged state sentence represents a sentence "sufficient, but not greater than necessary" to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2).

The first factor that the Court must consider in imposing sentence is "the nature and circumstances of the offense and the history and characteristics of the defendant."  18 U.S.C. § 3553(a)(1).   The Court is familiar with the nature and circumstances of the offense as it presided over the trial.   With respect to the history and characteristics of the defendant, Mr. Djoumessi asks the Court to consider the following factors.    He was born in Cameroon almost 50 years ago.   He attended university in Cameroon and obtained a bachelor of laws degree.   After working in Cameroon for the National Radio, he came to the United States at the age of 29.   He began working as a taxi driver and ice cream truck owner/operator and attending Community College to obtain prerequisite credits to enroll in a L.L.M program. In 1992, he enrolled in the L.L.M. program at Wayne State University and received his

degree in 1997.   He married his wife Evelyn in 1993.   Together they have three children, Monique age 13, Gabrielle age 11, and Bonomer, age 7.   Since Mr. Djoumessi's incarceration, all three children have resided with their mother.   At the time of his arrest, Mr. Djoumessi was working as an information technology consultant in California.

Mrs. Djoumessi currently awaits sentencing on this case as well.   Regardless of the sentence this Court imposes on Ms. Djoumessi, Mr. Djoumessi asks the Court to grant him the opportunity for release from custody while his children are still young enough for him to provide a positive influence on their development.   (Subject, of course, to the approval of the state parole authorities).

The Court must also consider the need for the sentence imposed to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense . . ."  18 U.S.C. § 3553(a)(2)(A).   The offense conduct in this case is certainly serious.   However, the involuntary servitude count carries a statutory maximum penalty of 10 years imprisonment.   Mr. Djoumessi has served almost seven years in custody and faces an additional minimum of two years before he is eligible for release from his state sentence. Because of the nature of the state conviction, parole at his earliest eligibility is far from a certainty despite Mr. Djoumessi's excellent prison record.   A  sentence of 26 months represents a total adjusted term of imprisonment near the statutory maximum sentence for involuntary servitude and meets the criteria of 18 U.S.C. § 3553(a)(2)(A).

The remaining factors under 18 U.S.C. § 3553(a)(2) are:  to afford adequate deterrence to criminal conduct, § 3553 (a)(2)(B); to protect the public from further crimes of the defendant, § (a)(2)(C); and to provide the defendant with needed educational or

14

vocational training, medical care, or other correctional treatment in the most effective manner, § (a)(2)(D).    The sentence request meets these criteria as well.   Nine years in custody is sufficient to provide deterrence.   There is little need to protect the public from future crimes of Mr. Djoumessi and he needs no additional education or training nor any medical treatment.

Section 3553 also directs the Court to consider the need to avoid unwarranted sentence disparities and the need to provide restitution to any victims of the offense. Although Mr. Djoumessi's prospects for providing meaningful restitution in this offense are severely limited, an additional term of incarceration will certainly reduce that possibility even further.

## CONCLUSION

For all of the above reasons, Mr. Djoumessi requests this Court to find that his applicable guideline line range is 108 to 135 months imprisonment and that an adjustment of 82 months pursuant to 5G1.3(b) is appropriate.  Based on these findings, Mr. Djoumessi asks the Court to impose a sentence of no more than 26 months imprisonment to be served concurrently with his undischarged state sentences.   Should the Court find that the guideline

range is higher, Mr. Djoumessi asks the Court to grant a downward departure and/or vary from the guideline range to impose the requested sentence.

Respectfully Submitted,

**FEDERAL DEFENDER OFFICE**
LEGAL AID & DEFENDER ASSN., INC.


s/ Andrew N. Wise
Attorney for Defendant Djoumessi
645 Griswold, Ste. 2255
Detroit, MI 48226
Phone: (313) 961-4150
E-mail:  Andrew_Wise@fd.org
P47003

Date:  May 22, 2007

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA

                   Plaintiff,

       v.                                         CR. NO.  05-80110
                                                Hon.  ARTHUR J. TARNOW

JOSEPH DJOUMESSI,

                   Defendant.

_____/

## CERTIFICATE OF SERVICE


      I hereby certify that on May 22, 2007, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

                        Gary M. Felder,
                        Assistant U.S. Attorney

                        Byron Pitts, Esq.

and that I have served a copy of by hand delivery upon:

                        Timothy Clolinger
                        U.S. Probation Officer


                                            s/ Andrew N. Wise
                                            Attorneys for Defendant Djoumessi
                                          645 Griswold, Ste. 2255
                                          Detroit, MI 48226
                                          Phone: (313) 961-4150
                                          E-mail:  Andrew_Wise@fd.org
                                          P47003